# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALPHA CEPHEUS, LLC, FIRST UNITED HEALTH, LLC, CONSTELLATION HEALTH, LLC, NAYA CONSTELLATION HEALTH, LLC, CONSTELLATION HEALTH INVESTMENT, LLC, and PAUL PARMAR,<br><br>                     Plaintiffs,<br><br>    v.<br><br>CHINH CHU, TRUC TO, DOUGLAS NEWTON, ANTONIO SCHIENA, MULTI OPERATIONAL SECURITY AGENCY INTELLIGENCE COMPANY, WARREN ERNST, JAMES STEPIEN, VICTOR CARDONA, CC CAPITAL CHT HOLDCO LLC, CHT HOLDCO LLC, and JOHN DOE 1-10,<br><br>                     Defendants. | Case No. 2:18-cv-14322 (MCA) (MAH)<br><br>Hon. Madeline Cox Arleo<br><br>Magistrate Judge Michael A. Hammer |

**DEFENDANTS CHINH CHU AND DOUGLAS NEWTON'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

**Table of Contents**

Preliminary Statement..............................................................................................1

Argument ...............................................................................................................3

    I.      The Securities Fraud Claims Have Been Released and Do Not State a Claim.......3

          A.     The Releases are valid and enforceable. ......................................................3

          B.     Plaintiffs have not pled the elements of securities fraud. ...........................6

    II.     Plaintiffs' Claims Do Not Satisfy the RICO Statute...............................................9

          A.     Plaintiffs do not satisfy the RICO "pattern" requirement..........................9

          B.     Plaintiffs do not plead a bankruptcy fraud predicate. ..............................10

          C.     The Obstruction of Justice, Witness Tampering, and Extortion predicates are also baseless as a matter of law..........................................................12

    III.    Plaintiffs Do Not Allege Violations of the SCA or Wiretap Act.........................15

Conclusion .............................................................................................................15

## Table of Authorities

### Cases

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*
   291 F.3d 336 (5th Cir. 2002) ......................................................................................... 7

*Abry Partners V, L.P. v. F & W Acquisition LLC*
   891 A.2d 1032 (Del. Ch. 2006)................................................................................... 4, 7

*Apparel Art Int'l, Inc. v. Jacobson*
   967 F.2d 720 (1st Cir. 1992)......................................................................................... 9

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*
   908 F.3d 872 (3rd Cir. 2018) ....................................................................................... 7

*CollegeSource, Inc v. AcademyOne, Inc.*
   597 F. App'x 116 (3d Cir. 2015) ................................................................................ 13

*Cosmetic Gallery, Inc. v. Schoeneman Corp.*
   495 F.3d 46 (3d Cir. 2017)......................................................................................... 14

*E.I. DuPont de Nemours and Co. v. Florida Evergreen Foliage*
   744 A.2d 457 (Del. 1999) ........................................................................................... 6

*H.J. Inc. v. Nw. Bell Tel. Co.*
   492 U.S. 229 (1989)..................................................................................................... 9

*Hughes v. Consol-Pa. Coal Co.*
   945 F.2d 594 (3d Cir. 1991)....................................................................................... 10

*In re DoubleClick, Inc. Privacy Litig.*
   154 F. Supp. 2d 497 (S.D.N.Y. 2001)........................................................................ 15

*Konop v. Hawaiian Airlines, Inc.*
   302 F.3d 868 (9th Cir. 2002) ..................................................................................... 15

*Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*
   652 F. Supp. 2d 576 (E.D. Pa. 2009) .......................................................................... 7

*Menasco, Inc. v. Wasserman*
   886 F.2d 681 (4th Cir. 1989) ....................................................................................... 9

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*
   836 F.2d 173 (3d Cir. 1988)................................................................................. 11, 14

*Religious Tech. Ctr. v. Wollersheim*
   971 F.2d 364 (9th Cir. 1992) ..................................................................................... 10

*Rodgers v. Prudential Ins. Co., of Am.*
   803 F. Supp. 1024 (M.D. Pa. 1992) ............................................................... 7

*Seven Investments, LLC v. AD Capital, LLC*
   32 A.3d 391 (Del. Ch. 2011) ..................................................................... 4, 6

*United States v. Simmons*
   591 F.2d 206 (3d Cir. 1979) ...................................................................... 13

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*
   176 F. Supp. 3d 387 (D. Del. 2016) ............................................................ 8

## Statutes

18 U.S.C. § 152 ............................................................................................... 10

18 U.S.C. § 157 ............................................................................................... 10

18 U.S.C. § 1512 ............................................................................................. 13

18 U.S.C. § 1962 ............................................................................................... 9

18 U.S.C. § 2510 ............................................................................................. 15

18 U.S.C. § 2511 ............................................................................................. 15

Private Securities Litigation Reform Act,
   15 U.S.C. § 78u-4 ..................................................................................... 1, 2

## Other Authorities

Wright & Miller, *Federal Practice and Procedure*
   § 1363 (2d ed. 1990) ................................................................................. 12

## Rules

Fed. R. Civ. P. 8 ........................................................................................... 2, 14

Fed. R. Civ. P. 9 ........................................................................................ 1, 2, 12

Fed. R. Civ. P. 12 ............................................................................................. 14

Defendants Chinh Chu and Douglas Newton respectfully submit this reply memorandum in support of their Motion to Dismiss the Amended Complaint (the "Motion" or "Def. Br.").

## Preliminary Statement

Plaintiffs' Opposition Brief (the "Opposition" or "Opp. Br.") effectively concedes that the Amended Complaint is indefensible under any normal standard of legal advocacy. Other than the boilerplate authorities cited in a "Legal Standard" section, Plaintiffs' 32-page brief relies on just three cases (while purporting to distinguish two cases relied on by Defendants). In Section I, Plaintiffs' discussion of their two securities fraud claims does not address *any case law* under the PSLRA[1] and Federal Rule of Civil Procedure 9, which define the pleading standards for those claims. Section II, Plaintiffs' analysis of their RICO cause of action, similarly does not cite a *single case* regarding the bankruptcy fraud, obstruction of justice, witness tampering, and extortion predicates—nor does it respond to or distinguish Defendants' authorities. And Section III fails to offer *any legal authority* in support of Plaintiffs' Stored Communication Act and Wiretap Act claims.

Plaintiffs' "Statement of Facts" is equally untethered. Plaintiffs cite to their complaint twice and to a CHT bankruptcy filing once. Eight pages of factual assertions lack any cite. Many of Plaintiffs' "facts" are not only asserted *ipse dixit*, but go beyond what the Amended Complaint alleges. Thus, for example, Plaintiffs now contend they were told that their "'equity is toast,'" Opp. Br. 8, even though nothing in the original complaint, or the Amended Complaint ("AC"), mentions any such statement. The Opposition also makes sensational assertions about Defendants

---

[1] Unless otherwise noted, defined terms have the meaning set forth Defendants' opening memorandum.

MOSAIC, Schiena, Stepien, and Cardona, while (wrongly) insinuating that they were directed and controlled by Chu in ways that the pleadings do not support.  Opp. Br. 11-12.

Plaintiffs' inability to defend—or even try to defend—their claims using the basic conventions of legal argument further confirms that this lawsuit was never intended as a genuine effort to vindicate actual legal rights.  By Plaintiffs' own admission, it is a "counter attack," Def. Br. 3 and n.1, which follows a series of similarly vexatious proceedings filed in this and other courts—all based on fanciful and unsubstantiated claims and trafficking in character assassination and conspiracy theories.  *See generally id.* 1-3.

The Amended Complaint should be dismissed.  Plaintiffs contend that Defendants ignore the controlling pleading standard and impermissibly contest the facts.  But it is ***Plaintiffs*** that refuse to recognize that the complex claims at issue—securities fraud, RICO, and electronic communications—have detailed and specific pleading requirements that in many cases exceed Rule 8(a).  <u>First</u>, not only have the securities fraud claims in Counts 1 and 2 been released, but these claims fail to satisfy the most basic elements of a fraud claim under Rule 9 and the PSLRA, such as the need to allege with particularity the specific statements by Chu and Newton that are purportedly actionable.  These claims are also facially incoherent and contradicted by the documentary evidence both parties agree is before the Court.  *See* Section I, below.  <u>Second</u>, Plaintiffs' RICO claims in Count 3 are equally baseless and irresponsible.  Plaintiffs' Opposition does not even try to address the technical defects in their alleged RICO predicate acts under the governing statutory scheme and legal authority.  And the pleadings—even accepted as true—do not permit the extraordinary inference that CC Capital is a criminal enterprise or that Chu and Newton engaged in outlandish criminal wrongdoing.  *See* Section II, below.  <u>Finally</u>, Plaintiffs' allegations of improper access to electronic communications in Counts 4 (Stored Communications Act) and 5 (Wiretap Act) do not satisfy the technical requirements of those statutes.  They also

2

impermissibly depend on conclusory accusations and alleged "concessions" by Chu and Newton

and others that are unsupported and unsupportable. *See* Section III, below.

**Argument**

**I.      The Securities Fraud Claims Have Been Released and Do Not State a Claim.**

Defendants' Motion showed that Plaintiffs' securities fraud claims are barred by release

provisions in Voting and Support Agreements executed in connection with the Go-Private

Transaction.  Def. Br. 9-13.  The Motion also showed that these claims fail because they lack

particularized allegations regarding who supposedly said what to whom and how Plaintiffs'

allegations could be reconciled with the undisputed factual context—including contracts

incorporated into the pleadings that contradict Plaintiffs' theories and disclaim reliance upon the

very representations Plaintiffs now claim are actionable.  Def. Br. 15-20.  The Opposition barely

engages with these issues.  Indeed, Plaintiffs largely ignore the relevant authorities, which

foreclose liability for the sort of undocumented and extra-contractual statements alleged.  Plaintiffs

also rehash the conclusory allegations in the Amended Complaint or seek to supplement these

allegations with new "facts" untethered from what their pleading actually says.  All these

arguments fail.  Whether based on the "Due Diligence" theory, the "Parmar Employment" Theory,

or the "Vanishing $20 Million" Theory, the fraud claims in Counts 1 and 2 should be dismissed.

A.  The Releases are valid and enforceable.

Plaintiffs acknowledge that Section 4(d) of the Voting and Support Agreements releases

Chu and Newton from "all claims" brought by Plaintiffs[2] "for or by reason of any matter, cause or

---

[2] Plaintiffs point out that the releases do not cover Plaintiff CHI, which did not execute a Voting and Support Agreement.  Opp. Br. 16 n.4.  But CHI did not sell shares through the Subscription Agreement in the Go-Private Transaction, *see* Dkt. 70-6 at 5, 10, 35, and thus could never be a proper securities fraud plaintiff regardless.

3

thing whatsoever occurring at any time at or prior to the Closing or with respect to the Company

… or the Merger." But Plaintiffs nonetheless claim the releases can be ignored. They are wrong.

First, Plaintiffs cannot evade the force of the releases by claiming the Voting and Support

Agreements were "based on fraudulent statements." Opp. Br. 16. The Motion showed this

argument is incoherent because Plaintiff Parmar was on both sides of the transaction that he now

asks the Court to accept as fraudulent. Def. Br. 10 (signing on behalf of plaintiffs and CHT).

Parmar and his affiliated entities cannot avoid releases based on alleged misrepresentations that

***Parmar himself made on the other side of the same transaction***.

To the extent Plaintiffs' theory is that the supposed fraud is based on representations made

by someone other than Parmar outside the scope of the Voting and Support Agreements, they have

waived such a claim. Plaintiffs represented that they were "not relying on any statement,

representation, or warranty … except as expressly set forth in" particular provisions of the Voting

and Support Agreements (which provisions did not discuss the special committee). Dkt 70-7

§ 5(e); *see* Def. Br. 10-11. Under governing Delaware law, "a party cannot promise, in a clear

integration clause of a negotiated agreement, that it will not rely on promises and representations

outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those

other representations' fraudulent inducement claim." *Abry Partners V, L.P. v. F & W Acquisition

LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006). Plaintiffs have no answer for these authorities, which

they neither address nor try to distinguish.

Second, Plaintiffs cannot avoid the releases by claiming "the terms of" of the Voting and

Support Agreements "were breached." Opp. Br. 17. The Amended Complaint does not allege any

such breach, and Plaintiffs have not obtained or even sought rescission or any another remedy by

which they could eschew their contractual obligations. *See Seven Investments, LLC v. AD Capital,

LLC*, 32 A.3d 391, 396 (Del. Ch. 2011) ("[W]here the language of the release is clear and

4

unambiguous, ***it will not lightly be set aside***.  If the claim falls within the plain language of the release, then the claim should be dismissed.") (emphasis added, internal quotation marks and citation omitted); *see id.* at 400-01.  Moreover, even on its own terms, Plaintiffs' breach theory assumes that "***acceptance*** of any Superior Proposal would terminate the Merger Agreement." Opp. Br. 17 (emphasis added).   Plaintiffs contend that CHT did receive a Superior Proposal. *Id.* But Plaintiffs do not argue that this Superior Proposal was ***accepted***.  It is undisputed that the Go-Private Transaction occurred, not a transaction based on a Superior Proposal.  Even assuming it was somehow relevant as a matter of law, there has been no articulated breach.

Third, Plaintiffs' fraudulent inducement theory fails because they do not allege any potentially actionable misrepresentation. Opp. Br. 16.  Even accepting as true Plaintiffs' litany of grievances about the special committee, all the Voting and Support Agreements say, in a recital, is that the special committee voted to recommend the Go-Private Transaction.  *Id*.  Plaintiffs do not dispute this fact, which is not "false information" about which "the parties knew." *Cf. id*.  To the extent Plaintiffs take issue with the ***justifications*** for this recommendation, that is an issue between them and the relevant directors, not an actionable misrepresentation in the Voting and Support Agreements themselves.  Def. Br. 11-12.

Plaintiffs' arguments about "sham promissory notes" also do not justify avoiding the releases.  The relevant allegation, in paragraph 150, says no more than that (a) shareholders were given promissory notes to induce them to sign the releases, (b) absent a release defense costs would have been be deducted from the promissory notes, and (c) the promissory notes are now unrecoverable.  AC ¶ 150.  Missing from these allegations is any identified misrepresentation. Equally fundamental, the Voting and Support Agreements do not even mention promissory notes. Thus, any representations about these notes are the kinds of extra-contractual statements on which Plaintiffs expressly disclaimed reliance.  *See* Dkt. 70-7 § 5(e).

Finally, Counts 1 and 2 are not future claims beyond the scope of the releases.  Opp. Br. 18.  Defendants' Motion showed that the date of the releases—November 24, 2016—was the date Plaintiffs agreed to vote in favor of the Go-Private Transaction and sell their shares.  Def. Br. 13.  Plaintiffs do not dispute this fact.  Instead, they assert their claims "cover fraudulent behavior that occurred after November 24, 2016."  Opp. Br. 18.  But they do not identify any such conduct.  Even more fundamentally, they cannot (and do not) explain how they were induced to sell shares on November 24 by something that occurred *afterwards*.  Plaintiffs' reliance on *E.I. Du Pont de Nemours* is misplaced.  Plaintiffs here do not allege there was a separate fraud in order to obtain a settlement that was "different sequentially and conceptually" from the type of claims being released.  *E.I. DuPont de Nemours and Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 462 (Del. 1999).  Plaintiffs' fraud allegations—that Defendants made promises in relation to the Go-Private Transaction and did not keep them—are precisely the kind of sellers-regret type grievance that the proxy releases were intended to foreclose.  As Delaware courts have subsequently held, *E.I. Du Pont* does not "require that the Court credit a bare allegation that a release was induced by fraud and therefore deny a motion to dismiss in the face of … the plain language of the release."  *Seven Investments, LLC*, 32 A.3d at 397.

B.  Plaintiffs have not pled the elements of securities fraud.

Even if the releases did not apply, Plaintiffs cannot satisfy the heightened pleading requirements for securities fraud.  Def. Br. 13-14, 16.  First, with respect to their "Due Diligence" theory of fraud, Plaintiffs do no more than repeat their assertion that Defendants Chu, Newton, and To "falsely and fraudulently represented to Plaintiffs that they would work to fix the issues with CHT and allow it to continue to grow as a profitably [sic] company," Opp. Br. 20, without identifying the specific speaker; stating "when and where the statement was made"; or explaining "with particularity what the person making the misrepresentations obtained thereby," among other

6

pleading deficiencies.  *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002); *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3rd Cir. 2018).  That Plaintiffs purport to identify "Chu, Newton, and Truc To" collectively as speakers, Opp. Br. 20, does not salvage the claim.  This allegation is still insufficient as a matter of law because it does not attribute an actionable misrepresentation to any specific individual.  *Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 594-95 (E.D. Pa. 2009).

Second, Plaintiffs' "Parmar Employment" theory of fraud—based on a supposed promise that Parmar would retain his role as CEO post-transaction—is also deficient as a matter of law.  Plaintiffs concede that "Parmar's employment was subject to termination."  Opp. Br. 20.  But they insist that the existence of a four-year contract term still supports their claim.  Fraud, however, requires *falsity*.  Here, Parmar was terminated under the terms of the very agreement he signed.  The employment agreement does not suggest *any* commitment to ensuring Parmar's continued employment.  *See Rodgers v. Prudential Ins. Co., of Am.*, 803 F. Supp. 1024, 1031 (M.D. Pa. 1992) ("as an at-will employee, Rodgers has no claim for fraud; the defendant reserved the right to employ him … for as long as the company desired"); *see also* Def. Br. 19.

Third, and independently, Count 1 fails because Plaintiffs have not alleged facts sufficient to satisfy the reliance element of their claim.  *See* Def. Br. 18.  Plaintiffs insist that their fraud theories are viable because "[i]t is utterly implausible" that "Plaintiffs would have allowed Defendants to take over control of CHT *without* assurance that they would help to fix these issues" and ensure Parmar's continued involvement.  Opp. Br. 21 (emphasis added).  But none of these supposedly material assurances were ever memorialized by the parties in the voluminous transaction documents.  Having failed to obtain enforceable contractual representations and having expressly disclaimed reliance on extra-contractual statements, *see* pp. 4, above, Plaintiffs cannot claim to have relied upon them now.  *See* Def. Br. 18; *Abry Partners V, L.P.,* 891 A.2d at 1057

("[S]ophisticated parties to negotiated commercial contracts may not reasonably rely on information that they contractually agreed did not form a part of the basis for their decision to contract."); *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 401 (D. Del. 2016) ("When parties identify a universe of contractually operative representations in a written agreement, they remain in that universe ... [and] cannot escape through a wormhole into an alternative universe of extra-contractual omissions.").   In any event, these alleged representations are anything but "plausible" in the circumstances of the Go-Private Transaction, where CC Capital was the **buyer** undertaking due diligence and relying upon **Plaintiffs'** material representations as **sellers**—not *vice versa*.  Def. Br. 16-17.

Finally, with respect to Count 2, Plaintiffs' attempted defense of their "Vanishing $20 Million" theory only highlights its deficiencies.  The Motion pointed out that Plaintiffs had failed to provide any coherent accounting of how their claims of "missing" money add up.  Def. Br. 20. In response, Plaintiffs still fail to do the math.  And they still do not explain how Chu or Newton were involved in any of the conduct at issue in Count 2 or what material misrepresentations they are alleged to have made in closing documents or otherwise.  Instead, Plaintiffs make excuses grounded in the "limited documents which have been provided" and the supposed fact that Defendants "have kept the majority of the true numbers hidden from everyone."  Opp. Br. 21.  But in the CHT Bankruptcy everyone from debtors' counsel to special litigation counsel for a liquidation trustee has had full access to the documents regarding the Go-Private Transaction. And, as the Motion pointed out and Plaintiffs do not dispute, if any funds actually "vanished," it would have resulted in less cash in CHT's accounts, which would been an issue for CHT itself to pursue.  Def. Br. 20-21.

Regardless, Plaintiffs cannot substitute excuses about documentation for allegations about which of the Defendants said what to whom and when about the supposed missing funds.  These

8

particulars are the most basic requirement of a fraud claim.  Yet, the only details offered by Plaintiffs are figures in various third-party submissions describing CC Capital's contribution in the Go-Private Transaction.  Opp. Br. 21-22.  The fact that certain documents say the contribution was $82.5 million rather than $88.6 million does not remotely suggest "approximately $20 million simply vanished or was unlawfully misappropriated by Defendants."  AC ¶ 315; *see also* Opp. Br. 22 (suggesting up to ***$34 million*** was stolen).  And these documents certainly do not support an inference that Chu or Newton made any relevant statements, let alone false statements, let alone false statements on which Plaintiffs relied.

II.     **Plaintiffs' Claims Do Not Satisfy the RICO Statute**

   A.  Plaintiffs do not satisfy the RICO "pattern" requirement.

Defendants' Motion showed that that the scattershot allegations in the Amended Complaint are insufficient to show the "relationship between the predicates" and "the threat of continuing activity" required by the "pattern" element of a claim under the RICO statute, 18 U.S.C. § 1962. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted); Def. Br. 22.  Plaintiffs do not show otherwise.

First, Plaintiffs concede that "various aspects of a single commercial transaction ordinarily cannot form the basis of racketeering activity," Opp. Br. 23, but attempt to carve the fallout from the Go-Private Transaction into supposed "distinct, but related unlawful acts," *id.* at 24.  However, those "acts" are, on their face, only conceptually "related" to each other by Plaintiffs' conspiracy theory about Defendants' singular goal to "steal the assets of a valuable company, [CHT]."  *See id*. at 1, 25.  "A single episode does not constitute a 'pattern', even if that single episode involves behavior that amounts to several crimes."  *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 723 (1st Cir. 1992); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (multiple predicate acts with single goal do not form pattern); *see also* Def. Br. 22 (citing additional cases).

Second, Plaintiffs cannot avoid the case law showing that predicate acts that do not extend beyond a twelve-month period are insufficient to establish the continuity required for a RICO claim. *See Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594, 611 (3d Cir. 1991) ("twelve months is not a substantial period of time" for purposes of establishing pattern of racketeering); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) ("We have found no case in which a court has held the [continuity] requirement to be satisfied by a pattern of activity lasting less than a year."). Plaintiffs offer no contrary authority. And, here, there is no well-pleaded allegation of any "continuing" threat of unlawful activity that extends beyond a year. The witness tampering, extortion, and obstruction of justice claims are alleged to have occurred from November 2017 to October 2018—an 11-month period.[3] Def. Br. 23. And, even if the bankruptcy fraud predicate is allegedly based on earlier conduct, this claim, as discussed below, is neither facially cognizable nor reasonably connected to the other allegations of wrongdoing; it cannot be bootstrapped to support the untenable inference that CC Capital is a criminal enterprise. Def. Br. 24.

B. Plaintiffs do not plead a bankruptcy fraud predicate.

Defendants' Motion demonstrated that Plaintiffs' bankruptcy fraud claim (RICO predicate 2) is hopeless. Def. Br. 25-28. Plaintiffs offer nothing to salvage it. First, the bankruptcy fraud claim must be dismissed based on Plaintiffs' concession that it arises under 18 U.S.C. § 157, which is ***not*** a proper RICO predicate. Opp. Br. 26. Plaintiffs suggest this does not matter because bankruptcy fraud could theoretically be pursued under a ***different*** statute, 18 U.S.C. § 152. *Id.* But no such claim exists in the Amended Complaint, and a "complaint may not be amended by the

---

[3] Plaintiffs assert that the relevant conduct spanned from "January 2017 through the present." But the ultimate facts they cite are alleged intimidation at the time of "the ***initial*** complaint" in September 2018, not even the March 2019 amended complaint. Opp. Br. 25-26.

briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).[4]

Second, Plaintiffs cannot justify their improper collateral attack on Judge Trust's jurisdiction over issues in the CHT Bankruptcy by claiming—falsely—that they "lack[] standing to object to the auction in the Bankruptcy Court." Opp. Br. 26; *see* Def. Br. 25-26.  The bankruptcy docket makes this plain.  On May 17, 2018, counsel appeared for Parmar and other Plaintiffs in the CHT Bankruptcy. *In re Orion Healthcorp., Inc.*, Case No. 18-71748-ast, Dkt. 231 (E.D.N.Y. Bankr. May 22, 2018).  As of that date, a hearing had been scheduled for May 24 regarding the bidding procedures for the auctions that Plaintiffs contend were problematic.  On May 21, Parmar's lawyers sought an adjournment of this hearing ***on the very basis*** that they sought an "opportunity to put before [Judge Trust] their positions with respect to the matters coming before the Court." *Id.* Dkt. 227.  Parmar and his bankruptcy counsel would only require more time to state "their positions" regarding the auction process if ***they believed they had standing to assert those positions***.  Parmar has also moved for the appointment of an examiner in the bankruptcy precisely because, following the CHT bankruptcy filing, "Chinh Chu then put into motion his elaborate plan to steal all of CHT's assets through his orchestration of two (2) bankruptcy sale auctions." Dkt 70-14 at 45 ¶ 120.  The examiner motion also repeats the litany of conspiratorial claims asserted against Defendants in this action and was filed well ***after*** this litigation—further rebutting the suggestion that Plaintiffs lack standing or that Judge Trust could not resolve any of the relevant issues because of an "absence of information." Opp. Br. 26.

---

[4] To add a new bankruptcy fraud claim, Plaintiffs would need to seek leave under Rule 15 and show, among other things, why they have not unduly delayed in bringing this claim (a year after the initial complaint was filed on the same facts) and why the claim would not be futile (even though Plaintiffs cannot identify a single instance in which the bankruptcy judge with jurisdiction and expertise credited any of Plaintiffs' theories, *see* Def. Br. 25).

Finally, Plaintiffs are wrong that Defendants are seeking dismissal of the Bankruptcy Fraud predicate by merely "disput[ing] the factual allegations." Opp. Br. 27. Rather, Plaintiffs flunk their heightened pleading standard. The Opposition merely **summarizes** the allegations in the Amended Complaint and makes the bald assertion that they are "very detailed and specific," *id.*, without identifying a single particularized allegation of fraud against Chu or Newton. *See* Fed. R. Civ. P. 9(b). Even worse, as the Motion demonstrated, Plaintiffs' conclusory allegations are contradicted by documents that are judicially noticeable or incorporated into the pleadings. Def. Br. 27-28. Plaintiffs cannot survive a motion to dismiss with unparticularized assertions that have been demonstrably contradicted. Wright & Miller*, Federal Practice and Procedure*, § 1363, at 464-65 (2d ed. 1990).

C. The Obstruction of Justice, Witness Tampering, and Extortion predicates are also baseless as a matter of law.

The Motion showed that Plaintiffs' over-the-top allegations of obstruction of justice, witness tampering, and extortion by Chu and Newton are both deficient on legal grounds and unsupported by particularized allegations that could support a credible inference of wrongdoing. Def. Br. 29-32. Plaintiffs try to avoid these fatal deficiencies by trumpeting purported "admissions" by Defendants that substantiate their claims. Opp. Br. 27-28. But Plaintiffs point to no statements by Chu or any of the other defendants suggesting, let alone conceding, that Chu or Newton instructed them to perform any unlawful or improper acts. And the evidence actually before the Court, such as the Chu Declaration, explains that Chu did **not** hire anyone to perform any criminal activity or to harass or threaten Parmar or his family. Dkt. 20-1 at 4-5.

Plaintiffs are also wrong that Defendants' arguments "amount to little more than feigned indignation." Opp. Br. 30. It is Plaintiffs that do not cite a single case. As shown below, for each predicate, Defendants' arguments are supported by legal principles that Plaintiffs cannot avoid.

*1. Obstruction of Justice.*   Plaintiffs argue their obstruction of justice claim meets the elements of 18 U.S.C. § 1503(a) because the **CHT Bankruptcy** is a "pending judicial proceeding". This is true but irrelevant.   Plaintiffs' obstruction predicate rests on the theory that Defendants provided allegedly false information to the FBI in connection with ***Parmar's criminal prosecution*** and ***bail proceeding*** in the District of New Jersey.   AC ¶¶ 330-32.   Regardless of whether such alleged obstruction may have collaterally affected Parmar's participation in the CHT Bankruptcy (a dubious claim), *cf. id.* ¶ 333, this is not the relevant proceeding for the obstruction analysis. And, as Defendants demonstrated in the Motion, false statements in relation to "an investigation that is being conducted by the FBI, or any similar governmental agency or instrumentality, d[o] not constitute a [section] 1503 violation[.]" *United States v. Simmons*, 591 F.2d 206, 208 (3d Cir. 1979).   Equally fundamentally, the Third Circuit has "never recognized obstruction of justice as a viable RICO predicate except in cases involving witness intimidation."[5] *CollegeSource, Inc v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015) (citation omitted).   This unrebutted authority requires dismissal of the obstruction predicate as a matter of law.  *See* Def. Br. 29-30.

2. *Witness Intimidation.*   The Motion showed that Plaintiffs' witness intimidation predicate does not state a claim because Plaintiffs do not make a threshold showing of how any of the individuals allegedly intimidated or harassed were relevant witnesses providing "testimony … in an official proceeding."  *See* Def Br. 30.   Plaintiffs ignore this point, which by itself requires dismissal under 18 U.S.C. § 1512(b).   Separately, Plaintiffs provide no basis to find that Chu or Newton could be vicariously liable for the alleged crimes and torts of others.   Plaintiffs assert that "those [who] perpetrated the unlawful acts admitted that they were doing so at Chinh Chu's behest,

---

[5] Although Plaintiffs bring separate claims for witness intimidation in respect of alleged surveillance and hacking, their obstruction claim does not rest on intimidation of any witness in an ongoing judicial proceeding.

13

with direction being provided by Douglas Newton." Opp. Br. 29. But there are no admissions supporting this conclusory claim, nor do Plaintiffs cite to any. That Stepien and Cardona's counsel filed a letter accusing Plaintiffs' counsel of intimidation in settlement negotiations does not "strengthen[ ] the argument that this case must proceed to discovery," Opp. Br. 30; if anything, it further evidences how Plaintiffs will twist any fact, even unfavorable ones. In these circumstances, Plaintiffs "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 51 (3d Cir. 2017). They have not done so. Just as this Court has found that Plaintiffs "failed to demonstrate that [Chu and Newton] were responsible for" the alleged acts of other defendants in the preliminary injunction context, Dkt. 21 at 2, those allegations are similarly deficient on this motion to dismiss.

*3. Extortion.* Plaintiffs' single paragraph defending the extortion predicate act repeats the same conclusory theories that the Motion showed to be insufficient to state a claim under Rules 8(a) and 12(b)(6). Def. Br. 31-32. It does not become more plausible that Chu has "power to control the FBI" because Plaintiffs assert as fact the issue they are trying to establish—that Chu "successfully lobbied the Department of Justice to have Mr. Parmar arrested using allegations that will be disproven at trial." Opp. Br. 30. Plaintiffs only highlight the frailty of their arguments by introducing a new, unsupported factual claim—untethered from the Amended Complaint—that Defendants created a "fake" "Demand for Payment" to "further intimidate Parmar". *Id*. Such new claims lack credibility and, as a matter of law, should not be considered when raised for the first time in opposition to a motion to dismiss. *See Pennsylvania ex rel. Zimmerman*, 836 F.2d at 181. Nothing Plaintiffs have offered—new or old—provides a plausible basis to infer that Chu and Newton had any involvement in any criminal wrongdoing.

14

### III.      Plaintiffs Do Not Allege Violations of the SCA or Wiretap Act

Plaintiffs' opposition fails to show how Counts 4 and 5 of the Amended Complaint state a claim under either the Stored Communications Act or the Wiretap Act, respectively.  *See* Def. Br. 31.  As with their parallel RICO allegations, Plaintiffs assert that Chu and Newton "directed others to do their dirty work" without offering any factual allegations that give rise to a plausible inference that this occurred.  Opp. Br. 31.  As a legal matter, Plaintiffs ignore the cases holding that SCA does not cover email records, like CHI's emails here, that are not in "temporary, intermediate storage" or "storage … for the purpose of backup protection" under 18 U.S.C. § 2510(17).  *See In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 511 (S.D.N.Y. 2001).   Plaintiffs do not even try to rebut this argument, which is fatal.  *See* Def. Br. 33-34.

To defend their Wiretap Act claim, Plaintiffs run away from the clear language of their pleading.  The Motion showed that even if, as alleged, Defendants "illegally downloaded a large amount of data from [Parmar's] system", AC ¶ 292, this would not amount to unlawful "interception" within the meaning of 18 U.S.C. § 2511.  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002).   In response, Plaintiffs now argue that the alleged hacking included monitoring "ongoing email and telephone communications."   Opp. Br. 32.   But the cited paragraphs in the Amended Complaint say nothing of the sort.  *See* AC ¶¶ 334, 351.  As actually alleged, Count 5 does not meet the standards of 18 U.S.C. § 2511.  *See* Def. Br. 34.

In short, Defendants' arguments about Count 4 and 5 do not rely on "creat[ing] a disputed issue of fact."  Opp. Br. 31.  They rest on legal principles with which Plaintiffs do not even engage, let alone rebut.  These counts should be dismissed because they fail ***as a matter of law***.

### Conclusion

For the foregoing reasons, Defendants Chu and Newton respectfully submit that the Court should dismiss the Amended Complaint with prejudice.

Dated: September 20, 2019

Respectfully submitted,


        /s/ *James E. Cecchi*
James E. Cecchi
Caroline F. Bartlett
CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone:  973-994-1700
Facsimile:  973-994-1744
jcecchi@carellabyrne.com

Eric Brenner
Julian Beach
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone:  212-446-2300
Facsimile:   212-446-2350
ebrenner@bsfllp.com