UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALPHA CEPHEUS, LLC, FIRST UNITED HEALTH, LLC, CONSTELLATION HEALTH, LLC, NAYA CONSTELLATION HEALTH, LLC CONSTELLATION HEALTH INVESTMENT, LLC, and PAUL PARMAR<br><br>Plaintiffs,<br><br>v.<br><br>CHINH CHU, TRUC TO, DOUGLAS NEWTON, ANTONIO SCHIENA, MULTI OPERATIONAL SECURITY AGENCY INTELLIGENCE COMPANY, WARREN ERNST, JAMES STEPIEN, VICTOR CARDONA, CC CAPITAL CHT HOLDCO LLC, CHT HOLDCO LLC, and JOHN DOE 1-10,<br><br>Defendants. | Civ. Action No. 18-cv-14322 (MCA) (MAH) |

**DEFENDANT TRUC TO'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................4

    I.       THE AMENDED COMPLAINT FAILS TO STATE A SECURITIES FRAUD CLAIM ..............................................................................................................................4

    II.      THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM ........................7

    III.     THE AMENDED COMPLAINT FAILS TO STATE A STORED COMMUNICATIONS ACT CLAIM ..........................................................................11

    IV.     THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ...13

CONCLUSION .............................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                                     **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 9, 12

*Baldwin v. Twp. of Union*,
  No. 02-1822, 2005 WL 3588473 (D.N.J. Dec. 29, 2005) ............................................ 9

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*,
  908 F.3d 872 (3d Cir. 2018) ......................................................................................... 6

*Clark v. Comcast Corp.*,
  582 F. Supp. 2d 692 (E.D. Pa. 2008) ......................................................................... 13

*Cornerstone Consultants, Inc. v. Prod. Input Sols., L.L.C.*,
  789 F. Supp. 2d 1029 (N.D. Iowa 2011) .................................................................... 13

*Cosmetic Gallery, Inc. v. Schoeneman Corp.*,
  495 F.3d 46 (3d Cir. 2007) ......................................................................................... 13

*Cty. Concrete Corp. v. Twp. of Roxbury*,
  442 F.3d 159 (3d Cir. 2006) ......................................................................................... 2

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001) ......................................................................................... 8

*Duran v. Equifirst Corp.*,
  No. 09-03856, 2010 WL 936199 (D.N.J. Mar. 12, 2010) ........................................... 8

*Ferrante v. Amgen, Inc.*,
  No. 13-07344, 2014 WL 1092555 (D.N.J. Mar. 18, 2014) ........................ 3, 4, 8, 10, 13

*Griglak v. CTX Mortg. Co.*,
  No. 09-5247, 2010 WL 1424023 (D.N.J. Apr. 8, 2010) .............................................. 8

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) ....................................................................................... 14

*Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*,
  No. 12-3375, 2013 WL 4517841 (D.N.J. Aug. 26, 2013) ........................................... 8

*Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*,
  652 F. Supp. 2d 576 (E.D. Pa. 2009) ........................................................................... 5

*Murray v. Cty. of Hudson*,
  No. 17-2875, 2018 WL 3000333 (D.N.J. June 15, 2018) ...................................... 9, 10

*Promote Innovation LLC v. Ortho-McNeil Pharm., LLC,*
    No. 11-607, 2011 WL 2837421 (D.N.J. July 14, 2011) ..............................................................14

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,*
    311 F.3d 198 (3d Cir. 2002).........................................................................................................5

*Tabas v. Tabas,*
    47 F.3d 1280 (3d Cir. 1995).........................................................................................................9

*United States v. Aguilar,*
    515 U.S. 593 (1995)....................................................................................................................11

*United States v. Simmons,*
    591 F.2d 206 (3d Cir. 1979).......................................................................................................11

*Winer Family Tr. v. Queen,*
    503 F.3d 319 (3d Cir. 2007)....................................................................................................2, 5

**RULE**

Fed. R. Civ. P. 11 .........................................................................................................................10

Defendant Truc To, by undersigned counsel, respectfully submits this Reply Memorandum in support of his Motion to Dismiss Plaintiffs' Amended Complaint ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

As Defendant To demonstrated in his opening brief, the Amended Complaint is fatally flawed as a factual and legal matter and should be dismissed with prejudice. *See* Defendant Truc To's Memorandum of Law in Support of His Motion to Dismiss the Amended Complaint, ECF No. 72 (May 10, 2019) ("Mem."). Defendant To showed that the claims against him were implausible within the meaning of *Iqbal* and *Twombly* and that Plaintiffs – lead by indicted fraudster Paul Parmar – could not state a claim for securities fraud, *id.* at 6-14, participation in a RICO conspiracy, *id.* at 14-21, or illicit computer hacking, *id.* at 21-26.

After taking three months to respond, Plaintiffs' Memorandum in Opposition to Motions to Dismiss, ECF No. 83 (Aug. 12, 2019) ("Opposition" or "Opp.") – like their Amended Complaint – is all but indecipherable, cobbling together stream-of-consciousness, implausible conspiracy theories, and "factual" assertions not even found in the Amended Complaint, all the while quoting from or purporting to respond to the parties' motions without even differentiating whether they are referring to Defendant To's Motion or Defendants Chu's and Newton's Motion to Dismiss. In other places, Plaintiffs simply fail to respond to arguments for dismissal made in Defendant To's Motion. *See, e.g.,* Mem. at 15-17 (argument that Plaintiffs fail to allege that Defendant To conducted or participated in the affairs of a RICO enterprise). Plaintiffs also include new (and irrelevant) factual assertions not included in their Amended Complaint. *See, e.g.,* Opp. at 5 (new assertions related to document submitted to Bank of America and changes made to the insurance policies for CHT). This Court need not consider or credit these new statements because review on

a motion to dismiss is limited to the allegations in the Amended Complaint. *Cty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 172 n.2 (3d Cir. 2006). And, in any event, Plaintiffs do not connect any of these last-minute arguments to any of the claims asserted against Defendant To.

The Opposition confirms that Plaintiffs have failed to state any plausible claims for relief, and the Amended Complaint should therefore be dismissed with prejudice. To support their claims, Plaintiffs generally continue to engage in a pattern of impermissible group pleading, repeating the same threadbare allegations that "Defendants" committed securities fraud, "Defendants" operated a criminal RICO enterprise, and "Defendants" illegally hacked Parmar's emails. *E.g.*, Opp. at 4-5, 10, 21, 23, 25, 31. These types of allegations and arguments are inconsistent with Rule 12(b)(6) and, where fraud is concerned, Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See Winer Family Tr. v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007) ("The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions.").

More specifically, each of the counts against Defendant To is defective, and Plaintiffs have done nothing to show that those claims should survive the Motion. *First*, with respect to the two securities fraud counts (Counts 1 and 2), Defendant To argued in his Motion that Plaintiffs fail to identify any misrepresentations attributable to him. Mem. at 7-10. In their Opposition, Plaintiffs continue to flout the requirements of Rule 9(b) and the PSLRA by repeating the generic allegation that "Defendants" made unspecified misrepresentations in unspecified documents on unspecified dates. Opp. at 20-22. Illustrating this pleading flaw, Plaintiffs now concede that at least one of the statements that the Amended Complaint alleges that "Defendants" made was *not* in fact made by Defendant To. *Id.* at 20. Defendant To also demonstrated that Plaintiffs do not pled facts giving rise to the requisite strong inference of scienter required by the PSLRA. Mem. at 10-14. In their

Opposition, Plaintiffs simply repeat their same implausible theory – that Defendant To knowingly participated in a scheme to defraud Plaintiffs in order to leave a well-paid position at KPMG and to join a fraudulent and now bankrupt CHT as its CFO, with compensation principally in now-worthless equity. Opp. at 5-6. Their theory is no more compelling on a second telling, and Plaintiffs still have not pled scienter.

*Second*, Defendant To argued that Plaintiffs' RICO claim (Count 3) fails to allege many of the key elements of that claim, including that Defendant To conducted the affairs of a RICO enterprise and engaged in a pattern of racketeering by committing at least two predicate acts. Mem. at 14-21. Plaintiffs say nothing in their Opposition about how Defendant To conducted the affairs of the alleged RICO enterprise (CC Capital) and thus have waived any argument that they have pled this element. *See Ferrante v. Amgen, Inc.*, No. 13-07344, 2014 WL 1092555, at *7 (D.N.J. Mar. 18, 2014) ("Courts in this District have held that the failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed."). This alone warrants dismissal of the RICO count as to Defendant To. As for the other RICO elements, Plaintiffs' own recitation of the facts shows that Defendant To's alleged involvement could not amount to a pattern of racketeering activity. Opp. at 23-24. Similarly, Plaintiffs fail to explain how Defendant To twice obstructed justice when the factual allegations are threadbare and elements of obstruction are missing. *Id.* at 28-30.

*Third*, Defendant To demonstrated in his Motion that the Stored Communication Act ("SCA") claim (Count 4) likewise must be dismissed. Mem. at 21-26. In the Amended Complaint, Plaintiffs make a boilerplate and conclusory allegation of computer hacking, *see id.* at 21-23, and simply repeat this boilerplate in their Opposition. Opp. at 31. Moreover, any claim of hacking would be self-defeating because Defendant To, the CFO of CHT, would have been authorized to

access emails on the CHT domain. Mem. at 23-25. Plaintiffs respond here with the implausible and self-contradictory claim that a CHT shareholder was the exclusive owner of the domain, Opp. at 31, a claim the Court need not credit on a motion to dismiss. Finally, Defendant To argued that the hacked emails were not in "electronic storage" as required by the SCA, Mem. at 25-26, an argument that Plaintiffs ignored in their Opposition and waived. *See Ferrante*, 2014 WL 1092555, at \*7.[1]

## ARGUMENT

### I. THE AMENDED COMPLAINT FAILS TO STATE A SECURITIES FRAUD CLAIM

The Amended Complaint's two securities fraud counts against Defendant To are vague, incoherent, and come nowhere close to satisfying the standards of the PSLRA and Rule 9(b). *See* Mem. at 7-14.[2] In their Opposition, Plaintiffs compound and repeat the deficiencies of their Amended Complaint.

*First*, Defendant To demonstrated that Plaintiffs fail to plead any false statement or omission by him, a necessary element – indeed, *the* essential element – of any securities fraud claim. Mem. at 7-10. Plaintiffs insist in their Opposition that they have "pleaded a specific basis of fraud." Opp. at 20. But even a cursory inspection of the Amended Complaint and Opposition shows that Plaintiffs have not identified a single allegedly false statement made by Defendant To. Rather, Plaintiffs continue to attribute unspecified statements to "Defendants," a form of

---

[1] Plaintiffs also alleged a wiretapping claim (Count 5), Amended Complaint ¶¶ 349-58, ECF No. 65 (Mar. 26, 2019) ("Am. Compl."), but did not name Defendant To in that count.

[2] Throughout their Opposition, Plaintiffs bizarrely assert that Defendant To's Motion to Dismiss "doesn't make a single reference to the Federal Rules of Civil Procedure" and "contain[s] no reference to the legal standards" for dismissal. Opp. at 2, 13. Those assertions are nonsense. *See* Mem. at 1 (stating that motion is made pursuant to Rule 12(b)(6)); *id.* at 2-3, 14-15 (discussing *Iqbal* standard for Rule 12(b)(6) motions); *id.* at 3, 6, 8, 12, 27 (discussing Rule 9(b) standard for fraud claims).

4

impermissible group pleading that does not satisfy the PSLRA. *Winer Family Tr.*, 503 F.3d at 335-36.

The first securities fraud count is purportedly based on two misrepresentations. First, Plaintiffs allege that "Defendants claimed to have conducted complete due diligence and fully understood all financial issues with CHT." Am. Compl. ¶ 301(a). Defendant To demonstrated in his Motion that this alleged misrepresentation could not support a securities fraud claim when the statement was not made by or attributable to Defendant To and the Amended Complaint otherwise omitted the "who, what, when, where, and how" required by Rule 9(b) and the PSLRA. Mem. at 7-10. Plaintiffs now claim the misrepresentation was that "Defendants Chu, Newton and Truc To" were allegedly aware of the fraud committed by Plaintiff Parmar at CHT and "falsely and fraudulently represented to Plaintiffs 'that they would work to fix the issues with CHT and allow it to continue to grow as a profitably [*sic*] company.'" Opp. at 20. Even if this "would fix" statement were actionable (and alleged in the Amended Complaint), Plaintiffs still do not identify the date, location, audience, or speaker for this alleged representation (or perhaps Plaintiffs claim that all three Defendants made this statement in perfect unison) and cannot attribute this statement to Defendant To. *See Winer Family Tr.*, 503 F.3d at 335-36; *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *see also Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 594-96 (E.D. Pa. 2009) (dismissing securities fraud claim that failed to specify the distinct roles of each defendant).

The second alleged misrepresentation in Count 1 is that "Defendants represented that Parmar would remain as the CEO of CHT and continue to oversee CHT's growth." Am. Compl. ¶ 301(b). Again, even assuming that such a "promise" were actionable, Defendant To showed that a misrepresentation attributed to "Defendants" is insufficient to state a claim. Mem. at 7-10.

Plaintiffs now apparently have abandoned this claim against Defendant To and assert in their Opposition that it was Defendants Chu and Newton (and *not* Defendant To) who made "assurances" that "Parmar would remain on as CEO." Opp. at 20. Plaintiffs thus concede that the second alleged misrepresentation had nothing to do with Defendant To. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 881 (3d Cir. 2018) (disregarding alleged misrepresentations made by affiliate companies in deciding whether defendant made a material misrepresentation).

The second securities fraud count is purportedly based on allegations that (i) "Defendants used a variety of methods to manipulate the closing documents and funds flow requirements to fraudulently induce Plaintiffs into contributing a much larger percentage of their equity than necessary" and (ii) "Defendants" have at "various" times overstated the cash CC Capital contributed to the transaction. Am. Compl. ¶¶ 313-15. Again, neither of these statements are attributed to Defendant To, who was an outside professional at KPMG, not a party to the transaction, and had no role (alleged or otherwise) in the closing or the flow of funds. *See* Mem. at 7-8. Plaintiffs now attempt to clarify that this count is actually based on the disappearance of millions of dollars at the closing and cite figures that ostensibly suggest confusion about the amount of money CC Capital contributed as part of the transaction. Opp. at 21-22. Even if this confusion were fraud, Plaintiffs still have not pointed to any statements by Defendant To in the unspecified "closing documents," Am. Compl. ¶ 313, nor could they, as Defendant To was at KPMG during this period (not CC Capital or CHT) and not a party to the transaction.

*Second*, with respect to both securities fraud counts, Defendant To demonstrated that Plaintiffs fail to allege facts giving rise to a "strong inference" of scienter with respect to Defendant To. Mem. at 10-14. On the contrary, Defendant To was the victim of Parmar's fraud. *Id.* The

Opposition does not address what factual allegations are suggestive of scienter. At most, Plaintiffs simply parrot the same implausible and deficient theory of fraud from the Amended Complaint. Opp. at 5-6. Under this theory, Defendant To allegedly learned of the fraud at CHT during the due diligence process and left his position at KPMG to become CFO of a company that he knew he was a fraud and would soon seek bankruptcy. *Id.* Plaintiffs argue that Defendant To's compensation as CFO was substantial because of its equity component, *id.* at 6, but do not explain why Defendant To would leave a lucrative and stable position at KPMG and knowingly accept a substantial portion of *equity* in a fraudulent company headed toward bankruptcy. *See* Am. Compl. ¶ 187; Mem. at 4-6, 13-14. Accordingly, Plaintiffs' allegations against Defendant To cannot support *any* inference of scienter – the most plausible inference is that Defendant To is one of the many victims of Parmar's lies and schemes – let alone the *strong* inference of scienter required by the PSLRA. Mem. at 10.[3]

## II. THE AMENDED COMPLAINT FAILS TO STATE A RICO CLAIM

In his Motion, Defendant To demonstrated that Plaintiffs fail to allege multiple elements of a RICO claim, including conducing the affairs of a RICO enterprise, a pattern of racketeering activity, and two predicate acts. Mem. at 14-21. In their Opposition, Plaintiffs either outright fail to address these grounds for dismissal or miss the mark with their response.

*First*, Defendant To showed that Plaintiffs fail to allege *any facts* in the Amended Complaint suggesting that Defendant To, a principal/partner at KPMG and later the CFO of CHT, "conduct[ed] or participat[ed], directly or indirectly, in the conduct" of the affairs of CC Capital,

---

[3] Defendant To further demonstrated that the securities fraud counts fail for numerous other reasons, including the failure to plead transaction causation (or reliance) or loss causation. Mem. at 13 n.6. Plaintiffs did not address these elements in their Opposition, providing yet additional reasons why the securities fraud counts must be dismissed.

7

the alleged RICO enterprise, as required by 18 U.S.C. § 1962(c). Mem. at 15-17. This was Defendant To's principal argument for dismissal of the RICO count. Notwithstanding taking three months to respond, Plaintiffs are completely silent on this issue. Plaintiffs therefore have waived this claim, and the Court should dismiss the RICO count as to Defendant To for this reason alone. *See Ferrante*, 2014 WL 1092555, at *7 ("Courts in this District have held that the failure to respond to an argument advanced in support of a motion to dismiss results in a waiver of the claim sought to be dismissed.").[4] And, in any event, the RICO count cannot survive a motion to dismiss when the Amended Complaint does not allege that Defendant To conducted or participated in the affairs of CC Capital. Mem. at 15-17.

*Second*, Defendant To demonstrated that Plaintiffs fail to allege that Defendant To engaged in a pattern of racketeering activity. Mem. at 20-21. Plaintiffs respond that they allege an "ongoing scheme, rather than a single distinct transaction," but lump together the conduct of all of the Defendants in describing that scheme. Opp. at 23-25. After disentangling the alleged conduct of Defendant To, the allegations as to him fall well short of alleging a pattern of criminal racketeering activity. *See DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (plaintiffs must establish RICO elements "as to each individual defendant"). At best, Plaintiffs allege that Defendant To was involved in two instances of alleged obstruction of justice occurring between November 2017 and May 2018. Am. Compl. ¶¶ 246, 257, 332. The alleged RICO activity (which is totally unrelated to "conduct[ing] or participat[ing]" in the affairs of the enterprise) thus covers,

---

[4] *See also Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, No. 12-3375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013) ("Plaintiff has waived its opposition to this argument by failing to respond to it."); *Duran v. Equifirst Corp.*, No. 09-03856, 2010 WL 936199, at *3 (D.N.J. Mar. 12, 2010) ("The absence of argument constitutes waiver in regard to the issue left unaddressed, and that waives the individual counts themselves."); *Griglak v. CTX Mortg. Co.*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").

by Plaintiffs' admission, a limited period of time (approximately seven months), involves a single "scheme" to have Parmar arrested and detained, and there are *no* allegations suggesting that Defendant To has continuing involvement with this far-fetched RICO enterprise. In these circumstances, the pattern element has not been satisfied. *See Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) (en banc) ("[T]his court has faced the question of continued racketeering activity in several cases, each time finding that conduct lasting no more than twelve months did not meet the standard for closed-ended continuity."); *Baldwin v. Twp of Union*, No. 02-1822, 2005 WL 3588473, at *6 (D.N.J. Dec. 29, 2005) ("Courts often hold that a single scheme involving a single injury to a single victim within a short period of time falls outside of RICO due to lack of continuity, even though all aspects are entirely related.").

*Third*, Defendant To showed that the obstruction of justice predicates fail as a matter of pleading because Plaintiffs have not alleged facts that would state a plausible claim against Defendant To. Mem. at 18-20; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5] The first obstruction predicate – involving the alleged transmission of false information to the Government – did not identify a single instance where *Defendant To* transmitted anything to the Government, much less a false statement. Mem. at 18. Plaintiffs concede in their Opposition that they did not specify "exactly the false statements made to law enforcement," but argue this is irrelevant because there is no "heightened pleading requirement" for the obstruction predicate. Opp. at 28. Even so, Plaintiffs' pleading must set forth a plausible theory, and Plaintiffs cannot clear that hurdle through impermissible group pleading and refusing to identify a single alleged false statement Defendant To made to the Government. *See Murray v. Cty. of Hudson*, No. 17-2875, 2018 WL 3000333, at

---

[5] Defendant To was not named in the additional alleged RICO predicates. *See* Am. Compl. ¶¶ 324-25 (extortion); *id.* ¶¶ 326-29 (bankruptcy fraud); *id.* ¶¶ 336-37 (witness tampering).

9

*4-5 (D.N.J. June 15, 2018). Plaintiffs also try to evade the pleading requirements by arguing that the alleged false statements "will not be disclosed until much later" in the criminal proceedings against Parmar. Opp. at 28. But the fact that the Government will not disclose prior written statements of its witnesses until closer to Parmar's criminal trial does not relieve Plaintiffs of the obligation to provide sufficient factual allegations to state a plausible RICO claim in their own case. If Plaintiffs did not have the factual support for this allegation, they never should have filed their Complaint. *See generally* Fed. R. Civ. P. 11.

The second obstruction predicate – involving the alleged anonymous tip to authorities – is likewise implausible because Plaintiffs do not allege any facts connecting the anonymous tip to Defendant To (besides the unremarkable fact that the tip originated in a city where Defendant To, among millions of other people, maintains a residence). Mem. at 19-20. Plaintiffs now claim that the anonymous tip can be connected to "Defendants" because the content of the tip was based on "information illegally obtained by Defendants[]" and "Defendant Chu impliedly admitted that Defendants were behind the tip." Opp. at 29-30. But an "implied admission" is not enough. Plaintiffs need to offer specific factual allegations that plausibly suggest Defendant To was involved in submitting the tip, and these vague references to "Defendants" will not do the trick. *See Murray*, 2018 WL 3000333, at *4-5.

*Fourth and finally*, Defendant To demonstrated that the obstruction of justice predicates fail as a matter of law because Plaintiffs do not allege witness intimidation or, with respect to the first predicate, a nexus to a pending judicial proceeding. Mem. at 18-20. Plaintiffs offer nothing in their Opposition in response to Third Circuit precedent limiting obstruction of justice in civil RICO claims to cases involving witness intimidation, *id.* at 19 (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015)), and have waived this claim. *Ferrante*,

10

2014 WL 1092555, at *7. Plaintiffs do try to argue that there is a nexus to a judicial proceeding in the first predicate, claiming that the submission of the false information was part of a plan to remove Parmar from the bankruptcy proceedings and thus "interfere" with those judicial proceedings. Opp. at 28. But Plaintiffs cannot rely on some imaginative and hypothetical domino theory to connect unspecified false statements to government authorities investigating criminal and civil fraud to collateral bankruptcy proceedings. *See United States v. Aguilar*, 515 U.S. 593, 599 (1995) (alleged obstruction act "must have a relationship in time, causation, or logic with the judicial proceeding"). Here, the alleged obstruction plainly has the closest relationship with the SEC and criminal investigation of Parmar, which does not constitute a judicial proceeding for purposes of the obstruction statute. *See id.*; *United States v. Simmons*, 591 F.2d 206, 207-08 (3d Cir. 1979).

### III. THE AMENDED COMPLAINT FAILS TO STATE A STORED COMMUNICATIONS ACT CLAIM

As with the RICO claim, Defendant To made three independent arguments for dismissal of the claim related to the SCA. Mem. at 21-26. The arguments raised by Plaintiffs in response are unpersuasive, and the SCA claim should be dismissed.

*First*, Defendant To showed that Plaintiffs fail to allege facts that plausibly suggest that Defendant To knowingly or intentionally "hacked" Parmar's emails. Mem. at 21-23. Plaintiffs do not directly address this argument, other than to claim that Defendant To was "personally and directly responsible for illegally accessing the constellationhealthgroup.com emails." Opp. at 31. But that assertion simply reinforces that Defendant To as CHT's CFO was authorized to access those emails. Moreover, Plaintiffs are simply repeating their unsupported and implausible allegation that Defendant To and others "illegally and without authorization, accessed the email server to obtain" all of Parmar's emails. Am. Compl. ¶ 343. Plaintiffs cannot simply copy and

11

paste the statutory language from the SCA to state a plausible claim. The SCA count should be dismissed. *See* Mem. at 22 (citing *St. Johns Vein Ctr., Inc. v. StreamlineMD LLC*, 347 F. Supp. 3d 1047, 1065 (M.D. Fla. 2018); *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 606-07 (S.D.N.Y. 2015); *Markert v. Becker Tech. Staffing, Inc.*, No. 09-5774, 2010 WL 1856057, at *6 (E.D. Pa. May 7, 2010)).

*Second*, Defendant To demonstrated that the SCA claim alleged in the Amended Complaint is fatally flawed because Defendant To, as CFO of CHT, would have been authorized to access Parmar's emails on the CHT domain that CHT used to conduct business. Mem. at 23-25. Plaintiffs claim that Defendant To is trying to create a factual dispute at the Rule 12 stage with this argument. Opp. at 31. Not so. The question on a motion to dismiss is whether the well-pleaded facts in the Amended Complaint state a plausible SCA claim for unauthorized hacking. *See Iqbal*, 556 U.S. at 678. This plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In this case, Plaintiffs allege that Defendant To, the CFO of Constellation Healthcare Technologies, "hacked" emails stored on the constellationhealthgroup.com domain. *See* Mem. at 21, 23-25. In order to substantiate this alleged hacking, Plaintiffs would have this Court accept as plausible the claim that a shareholder entity of a publicly traded company was the sole and exclusive owner of the company's domain, such that CHT could not lawfully access emails stored on the domain used by all CHT employees without the authorization of that shareholder. Am. Compl. ¶¶ 341-42.[6] To state that proposition is to refute it. In any event, that claim of unauthorized

---

[6] Plaintiffs also assert that the website still lists Plaintiff Parmar as CEO, "which is not what would be expected if Defendants really had legal possession of this domain." Opp. at 31. Defendant To did not argue that he had "legal possession" of the domain, and this says nothing about whether any alleged access of Parmar's emails was authorized for purposes of the SCA.

hacking is inconsistent with other allegations in the Amended Complaint, as the domain leads to CHT's website and it is clear that CHT used the domain to conduct business. Mem. at 23-24. Moreover, Plaintiffs cannot rely on the allegation that Parmar's emails were disclosed to the Government to substantiate the hacking, Opp. at 10, because disclosure is irrelevant to authorization under the SCA. *See Cornerstone Consultants, Inc. v. Prod. Input Sols., L.L.C.*, 789 F. Supp. 2d 1029, 1051 (N.D. Iowa 2011) ("The fact that e-mails were obtained gives rise to reasonable inferences that the facility was accessed; it implies nothing whatever about whether the access was authorized—indeed, it begs precisely that question."). In these circumstances, Plaintiffs "must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 51 (3d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also* Mem. at 23-25. Plaintiffs have not done so here, and the SCA count should be dismissed.

*Third*, Defendant To showed that Plaintiffs fail to allege that the emails in question were in "electronic storage," an essential element of any civil claim under the SCA. Mem. at 25-26. Plaintiffs say nothing about the electronic storage element in their Opposition. Accordingly, the claim is waived and the Court is free to dismiss the SCA claim for failure to allege an essential element. *See Ferrante*, 2014 WL 1092555, at *7.

### IV.  THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs should not get a third bite at the pleading apple, and the Amended Complaint should be dismissed with prejudice. Mem. at 27. Plaintiffs have already had an opportunity to amend their original Complaint in response to Defendants' prior motions to dismiss, and granting leave a second time would be futile and result in prejudice to Defendant To. *See Clark v. Comcast Corp.*, 582 F. Supp. 2d 692, 707 (E.D. Pa. 2008). Plaintiffs have been on notice regarding the

13

various deficiencies in their claims for months and still have not even suggested how they could fix these deficiencies – nor could they, as Defendant To was unquestionably a victim of Parmar's fraud. In these circumstances, the Amended Complaint should be dismissed with prejudice. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 246 (3d Cir. 2004); *Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, No. 11-607, 2011 WL 2837421, at *2 (D.N.J. July 14, 2011).

## CONCLUSION

For the foregoing reasons and those stated in his Motion to Dismiss, Defendant To respectfully submits that the Court should dismiss the Amended Complaint in its entirety and with prejudice.

Dated: September 20, 2019

Respectfully submitted,

Frank R. Velocci
**DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
(973) 549-7078
frank.velocci@dbr.com

Michael D. Warden
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
mwarden@sidley.com

*Attorneys for Defendant Truc To*